# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | No. 3:22-cr-00381 |
| | ) | |
| **KEYTONIO LEWIS** | ) | |

## MEMORANDUM OPINION

Section 922 of Title 18 makes it unlawful for felons to possess firearms that have crossed state lines. 18 U.S.C. 922(g)(1). The statute also prohibits many others from possessing firearms that have an interstate nexus, including: fugitives ((g)(2)); unlawful users or addicts of controlled substances ((g)(3)); "mental defectives" ((g)(4)); illegal or unlawful aliens ((g)(5)); dishonorably discharged veterans ((g)(6)); those who have renounced their citizenship ((g)(7)); certain harassers and stalkers ((g)(8)); and domestic violence misdemeanants ((g)(9)).

The broad swath of Section 922(g) has led to a great number of Second Amendment challenges, which provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court's decisions in District of Columbia v. Heller, 554 U.S. 570 (2008) and, more particularly, New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022) has led to a new spate of challenges. The former upheld the right of "responsible citizens to use arms in defense of hearth and home," and found that a District of Columbia ordinance that prohibited possession of usable firearms in the home violated the Second and Fourteenth Amendments. Heller, 554 U.S. at 635. The latter, "consistent with Heller," found "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." Bruen, 142 S. Ct. at 2122.

In the fifteen months since Bruen was decided, at least 225 district court opinions have been issued discussing the constitutionality of various subsections of Section 922(g) in light of that case. Indeed, earlier this year, this Court addressed and rejected such a challenge in United States v. Gleaves, No. 3:22-CR-00014, 2023 WL 1791866 (M.D. Tenn. Feb. 6, 2023) where one defendant was charged with being a felon-in-possession in violation of subsection (g)(1), and another defendant (his brother) was charged with possession of a firearm after having sustained a misdemeanor conviction for domestic violence in violation of subsection (g)(8).

The Court is now presented with substantially similar arguments in this case where Keytonio Lewis is alleged to have possessed a firearm while being a user of a controlled substance in violation of subsection (g)(3). Once again, the Court finds the particular subsection of 922(g) to be constitutional on its face. The Court also finds, however, that whether the statute is constitutional as applied to this particular defendant is one that can only be addressed at or after trial.

## I.

Prior to Bruen, most appellate courts (including the Sixth Circuit in Stimmel v. Sessions, 879 F.3d 198, 204 (6th Cir. 2018)), utilized a two-step test in analyzing Second Amendment challenges. This consisted of a so-called "history test" that looked at the Second Amendment "as originally understood" by the Framers, and, then, if necessary, a "means/end test" that analyzed "how close the law [came] to the core of the Second Amendment right," together with "the severity of the law's burden on that right." Bruen, 142 S. Ct. at 2126. The Supreme Court in Bruen, however, found this to be "one step too many." Id. at 2127. Instead, the proper test "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." Bruen, 142 S. Ct. at 2131.

"Applying analogical reasoning," the Government in this case argues that "Section 922(g)(3) fits comfortably within the American historical tradition of firearm regulation." (Doc. No. 36 at 9). This is "because it shares a similar purpose with at least two categories of historical firearm regulations," those being the disarmament of individuals (1) "deemed to be dangerous," and (2) who are "mentally ill." (Id. at 10). The Government then spends pages discussing examples of historically disarmed groups including "Catholics, loyalists, Native Americans, and intoxicated individuals." (Id. at 10-22). It mentions the English Civil War; the "Interregnum period" that followed; the ascension of Charles II (a Protestant) to the throne; his replacement by King James II (a Catholic); and then the Glorious Revolution of 1688 whereby Protestants again were in charge in the form of King William and Queen Mary. "Under William and Mary," the Government argues, "the pendulum had now swung again – this time in favor of Protestants and against Catholics." (Id. at 11).

So it remained when the English Bill of Rights – "the predecessor to our Second Amendment," Heller 554 U.S. at 593 – was passed and the English Parliament forbade Catholics from possessing firearms unless they renounced their faith. (Id.). "This historical practice of disarming Catholics on grounds of presumed dangerousness migrated from England to the colonies." (Id. at 12). Also prohibited from possessing firearms in the colonies were intoxicated persons, with a 1655 Virginia statute prohibiting those who would "shoot any gunns at drinkeing (marriages and funeralls only excepted)," and a 1746 New Jersey statute that authorized militia officers to disarm soldiers who appeared "in Arms disguised in Liquor." (Id. at 15-16) (citations omitted).

A casual reader likely does not know this history and can be forgiven for thinking that William and Mary were best known for chartering the second oldest institution of higher learning

3

in this country and the only one established by Royal Decree. But alas, that is what happens when a court is called upon to decide cases "based on the arguments of non-historian lawyers, citing cases by non-historian judges, who relied on arguments by other non-historian lawyers, and so on in a sort of spiral of 'law office history.'" United States v. Kelly, No. 3:22-CR-00037, 2022 WL 17336578, at *3 (M.D. Tenn. Nov. 16, 2022) (quoting Bruen, 142 S. Ct. at 2177 (Breyer, J., dissenting)). Still, a court must endeavor to grasp the "Second Amendment's text and historical understanding." This Court has no basis to dispute the Government's characterization of that history particularly when it is not really countered by Lewis other than by his observing that (1) Congress did not ban drug users from possessing firearms until relatively recently (1968), and (2) "[d]uring out Nation's founding, hemp, the same plant as marijuana, was widely grown in the United States." (Doc. No. 27 at 7).[1] Nor does the language and analysis in Heller or Bruen suggest that those who are deemed "dangerous" by Congress and those who are habitual drunkards cannot be banned from bearing arms.

Both Heller and Bruen were couched in terms of "law-abiding citizens." Consider, for example, the opening paragraph of Bruen:

> In District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), and McDonald v. Chicago, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), we recognized that the Second and Fourteenth Amendments protect the right of an *ordinary, law-abiding citizen* to possess a handgun in the home for self-defense. In this case, petitioners and respondents agree that *ordinary, law-abiding citizens* have a similar right to carry handguns publicly for their self-defense. We too agree, and now hold, consistent with Heller and McDonald, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.

Bruen, 142 S. Ct. at 2122 (emphasis added) On no less than 10 occasions thereafter, the majority

---

[1] During that period, hemp, a fiber plant, was primarily used to make rope, thread, sails, cloth and paper. https://research.colonialwilliamsburg.org/foundation/journal/Winter15/hemp.cfm

4

opinion speaks in terms of "law-abiding" citizens, id. at 2125, 2131, 2133, 2134, 2138, 2150, 2156, something that, by definition, unlawful drug users are not (at least when they are under the influence). Moreover,

> [t]he concurrences and dissent in Bruen underscore that the Supreme Court foresaw the legal challenges which may arise as a result of Bruen, including the issue now raised in the present motion[s] to dismiss[.] That Justices Kavanaugh, Roberts, and Alito each determined the need to highlight the particular language in Heller setting forth certain presumptively lawful "longstanding prohibitions" demonstrates a desire to make clear the limits of the Supreme Court's decision in Bruen and to emphasize the remaining viability of the Supreme Court's statements in Heller and its progeny as to specific conduct which falls outside of the protection of the Second Amendment and which may be properly curbed by gun regulations.

United States v. Minter, 635 F. Supp. 3d 352, 359 (M.D. Pa. 2022). see also, United States v. Siddoway, No. 1:21-CR-00205-BLW, 2022 WL 4482739, at *1 (D. Id. Sept. 27, 2022) (noting that "at least five justices" explicitly suggested that Heller was not overruled).

Lewis characterizes the "lawful citizen" language in Heller and Bruen as mere *dicta*. However, "'[l]ower courts are obligated to follow Supreme Court *dicta*, particularly where there is no substantial reason for disregarding it, such as age or subsequent statements undermining its rationale.'" Holt v. City of Battle Creek, 925 F.3d 905, 910 (6th Cir. 2019) (quoting, In re Baker, 791 F.3d 677, 682 (6th Cir. 2015)). At a minimum, lower courts "must give on-point Supreme Court *dictum* substantial weight," because "lower courts are 'bound not only by the holdings of higher courts' decisions but also by their 'mode of analysis.'" United States v. Fields, 53 F.4th 1027, 1048 n.13 (6th Cir. 2022) (quoting Troy v. Samson Mfg. Corp., 758 F.3d 1322, 1326 (Fed. Cir. 2014)).

Moreover, *dicta* or not, the vast majority of courts addressing the issue have found Section 922(g)(3) post-Bruen constitutional. See e.g., United States v. Okello, No. 4:22-CR-40096-KES,

5

Case 3:22-cr-00381   Document 40   Filed 09/25/23   Page 5 of 10 PageID #: 150

2023 WL 5515828, at *6 (D.S.D. Aug. 25, 2023) (finding that "18 U.S.C. § 922(g)(3) is constitutional under Bruen"); United States v. Espinoza-Melgar, No. 2:21-CR-204-DAK, 2023 WL 5279654, at *9 (D. Utah Aug. 16, 2023) (joining the "overwhelming majority" of courts upholding Section 922(g)(3) and noting that, "as of August 8, 2023," in 26 of 28 cases, "the district judges concluded that § 922(g)(3) remains constitutional after Bruen"); United States v. Costianes, No. CR JKB-21-0458, 2023 WL 3550972, at *4 (D. Md. May 18, 2023) (utilizing "Bruen's analysis" and holding that "§ 922(g)(3) is constitutional"); United States v. Le, No. 423CR00014SHLHCA, 2023 WL 3016297, at *5 (S.D. Iowa Apr. 11, 2023) (finding that because of earlier Eighth Circuit precedent, Bruen did not affect constitutionality of ban against drug users possessing firearms); United States v. Bulltail, No. CR-22-86-BLG-SPW, 2023 WL 5458780, at *2 (D. Mont. Aug. 24, 2023) (same); United States v. Posey, No. 2:22-CR-83 JD, 2023 WL 1869095, at *7 (N.D. Ind. Feb. 9, 2023) (same in light of Seventh Circuit precedent); United States v. Seiwert, No. 20 CR 443, 2022 WL 4534605 (N.D. Ill. Sept. 28, 2022) (same); United States v. Black, No. CR 22-133-01, 2023 WL 122920, at *3 (W.D. La. Jan. 6, 2023) ("The Court finds that the regulation here is consistent with historical regulations on the right to possess firearms and thus passes constitutional muster."); United States v. Sanchez, No. W-21-CR-00213-ADA, 2022 WL 17815116, at *2 (W.D. Tex. Dec. 19, 2022) ("This Court finds that Section 922(g)(3) is constitutional, both because Defendant's conduct is not covered by the Constitution and because the regulation is consistent with this Nation's historical tradition of firearm regulation.").

A notable exception to the foregoing is the Fifth Circuit's decision in United States v. Daniels, 77 F.4th 337 (5th Cir. 2023). There, the court found that Section 922(g)(3) was unconstitutional as applied to a marijuana user. This was in keeping with its earlier decision in

6

United States v. Rahimi, 61 F.4th 443, 453 (5th Cir. 2023), cert. granted, No. 22-915, ⸺ U.S. ⸺, 143 S.Ct. 2688 (June 30, 2023) that found the same with respect to a defendant convicted of misdemeanor domestic violence. The Daniels court reasoned that one "cannot read too much into" the Supreme Court's "chosen epithet," and found, as in Rahimi, "that when Heller and Bruen used the phrase 'law-abiding,' it was just 'short-hand' to 'exclude from the . . . discussion' the mentally ill and felons, people who were historically 'stripped of their Second Amendment rights.'" Daniels, 77 F.4th at 342-43 (quoting Rahimi, 61 F.4th at 52). This Court has read both Heller and Bruen several times and finds this a lot to read into those cases, particularly because the Supreme Court is not known for choosing words indiscriminately.

The court in Daniels also found, however, that Section 922(g)(3) was unconstitutional as applied to the defendant before it because the Government identified "no class of persons at the Founding (or even at Reconstruction) who were 'dangerous' for reasons comparable to marihuana users." Id. at 354. The Fifth Circuit continued:

> Marihuana users are not a class of political traitors, as British Loyalists were perceived to be. Nor are they like Catholics and other religious dissenters who were seen as potential insurrectionists. And even if we consider the racially discriminatory laws at the Founding, Daniels is not like the minorities who the Founders thought threatened violent revolt.

Id. This analysis has been criticized because the "court sought to find in the historical record not a 'well-established and representative historical analogue' to § 922(g)(3), but rather a 'historical twin' – thereby imposing a 'regulatory straightjacket' on Congress that vastly exceeds what the Supreme Court requires." United States v. Espinoza-Melgar, No. 2:21-CR-204-DAK, 2023 WL 5279654, at *10 (D. Utah Aug. 16, 2023) (quoting Bruen, 142 S. Ct. at 2133).

Whether the criticism of Daniels is fair or not, this Court need not decide. For one thing,

Daniels is a Fifth Circuit case and therefore not binding on this Court. For another, Daniels ultimately held that, "as applied to [defendant], § 922(g)(3) violates the Second Amendment." Daniels, 77 F.4th at 340. It concluded "by emphasizing the narrowness of its holding" – it "invalidate[d] the statue . . . only as applied to Daniels." Id. at 355. It is this "as applied" aspect of Lewis's argument where the Court sees potential merit.

## II.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." F.C.C. v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012). A statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304 (2008).

"For challenges to the statute that do not implicate First Amendment concerns, the 'defendant bears the burden of establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation.'" United States v. Kernell, 667 F.3d 746, 750 (6th Cir. 2012) (quoting United States v. Krumrei, 258 F.3d 535, 537 (6th Cir. 2001)). "Even if a statute might be vague as it relates to other, hypothetical defendants, courts will not entertain vagueness challenges on behalf of a defendant whose conduct clearly falls within the ambit of the statute." Id.

In his brief, Lewis claims that he "is alleged to have used marijuana based solely on his own reports to officers during an interrogation." (Doc. No. 27 at 7). He also points out that, "[u]nlike many, [he] has no felony or even misdemeanor drug convictions on his records [sic]" and suggests

8

that "he occasionally used marijuana as a sleeping aid." (Id.).

If Lewis is really just an on again, off again, user of marijuana who occasionally took the drug to help him sleep, one wonders why the Government presented this case to a grand jury. After all, in United States v. Burchard, the Sixth Circuit "offer[ed] an instruction for future use that embodies the necessary concepts":

> The term "unlawful user of a controlled substance" contemplates the regular and repeated use of a controlled substance in a manner other than as prescribed by a licensed physician. The one time or infrequent use of a controlled substance is not sufficient to establish the defendant as an "unlawful user." Rather, the defendant must have been engaged in use that was sufficiently consistent and prolonged as to constitute a pattern of regular and repeated use of a controlled substance. The government need not show that defendant used a controlled substance at the precise time he possessed a firearm. It must, however, establish that he was engaged in a pattern of regular and repeated use of a controlled substance during a period that reasonably covers the time a firearm was possessed.

580 F.3d 341, 352 (6th Cir. 2009). More succinctly, "'to sustain a conviction under § 922(g)(3), the government must prove . . . that the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his purchase or possession of a firearm.'" Id. at 350 (quoting United States v. Purdy, 264 F.3d 809, 811 (9th Cir. 2001)). Presumably, Government has evidence to fall within the "necessary concepts" of Burchard.

Obviously, the Court has no knowledge of Lewis's drug usage (if any – marijuana or otherwise) nor is it privy to the Government's evidence. The Court will learn this information at trial so that it can determine whether Section 922(g)(3), *as applied to Lewis*, violates the Second Amendment. At that point, the Court will not necessarily be limited to the parameters set out in Burchard whose concern was only with the language of the statute. As the Fifth Circuit in Daniels observed:

> The statutory term "unlawful user" captures regular users of marihuana, but its temporal nexus is vague—it does not specify how recently an individual must "use" drugs to qualify for the prohibition. Daniels himself admitted to smoking marihuana fourteen days a month, but we do not know how much he used at those times, and the government presented no evidence that Daniels was intoxicated at the time he was found with a gun. Indeed, under the government's reasoning, Congress could ban gun possession by anyone who has multiple alcoholic drinks a week from possessing guns based on the postbellum intoxicated carry laws. The analogical reasoning <u>Bruen</u> prescribed cannot stretch that far.

<u>Daniels</u>, 77 F.4th at 348.

None of this is to say that the Court will necessarily follow the reasoning in <u>Daniels</u>. It is to say, however, that the Court will "resist the pull[] to decide the constitutional issues involved in this case on a broader basis than the record before [it] imperatively requires." <u>Street v. New York</u>, 394 U.S. 576, 581 (1969).

### III.

For the foregoing reasons, Lewis's Motion to Dismiss Indictment (Doc. No. 27) will be denied. That denial, however, will be without prejudice to him raising his "as applied" challenge at trial.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE